Randy Nussbaum, Esq., #006417
Peter M. Gennrich, Esq., #021788
**NUSSBAUM GILLIS & DINNER, P.C.**
14500 N. Northsight Blvd., Suite 116
Scottsdale, Arizona 85260
Telephone: (480) 609-0011
Facsimile: (480) 609-0016
rnussbaum@ngdlaw.com
pgennrich@ngdlaw.com

Attorneys for Teodor Cociuba
and Dina Cociuba, Debtors

# UNITED STATES BANKRUPTCY COURT

## DISTRICT OF ARIZONA

In re:

TEODOR COCIUBA and
DINA COCIUBA,

Debtors.

In Proceedings Under Chapter 11

Case No: **2:11-bk-02402-RTB**

**DEBTORS' PLAN OF REORGANIZATION**

CREDITORS SHALL BE PROVIDED FOR AND PAID AS STATED IN THIS PLAN. THE PROVISIONS OF A CONFIRMED PLAN BIND THE DEBTORS AND ALL CREDITORS, WHETHER OR NOT SUCH CREDITOR IS IMPAIRED UNDER THE PLAN OR HAS ACCEPTED THE PLAN. CONFIRMATION OF THE PLAN BINDS ALL CLAIMANTS TO TREATMENT OF THEIR CLAIMS AS PROVIDED FOR IN THIS PLAN. SEE BANKRUPTCY CODE SECTION 1141(a).

AS PART OF THE PLAN CONFIRMATION ORDER, THE DEBTORS SEEK A FINDING BY THE COURT THAT THE CLASS 1 CLAIM OF WASHINGTON MUTUAL, n/k/a JP MORGAN CHASE BANK, N.A., IN THE AMOUNT OF $1,700,000 IS SECURED TO THE EXTENT OF $750,000 AND UNSECURED TO THE EXTENT OF $950,000 AND THAT ITS LIEN ON THE DEBTORS' REAL PROPERTY SECURING SAID CLAIM SHALL BE LIMITED TO $750,000 FOR THE REASON THAT THE CURRENT FAIR MARKET VALUE OF SAID REAL PROPERTY IS NO MORE THAN $750,000, THEREBY BIFURCATING THE CLASS 1 CLAIM OF WASHINGTON MUTUAL, n/k/a JP MORGAN CHASE BANK, N.A., INTO A SECURED CLAIM OF $750,000 TO BE PAID IN FULL ACCORDING TO THE TERMS OF THIS PLAN AND AN UNSECURED CLAIM OF $950,000 TO BE PAID *PRO RATA* AS A CLASS 5 UNSECURED CLAIM ACCORDING TO THE TERMS OF THIS PLAN.

*SEE* BANKRUPTCY CODE SECTIONS 506(a)(1), 506(d) and 1123(b)(5).

Teodor Cociuba and Dina Cociuba, the Debtors in the above-captioned Case (the "Debtors"), hereby propose the following Plan of Reorganization pursuant to section 1121(a) of the United States Bankruptcy Code.

## ARTICLE I

### SUMMARY

This Plan of Reorganization (the "Plan") under Chapter 11 of the Code proposes to pay creditors of the Debtors from wages paid to Debtors Teodor Cociuba and Dina Cociuba for their employment services.

This Plan provides for the payment of administrative claims to the Debtors' professionals, to be paid by agreement with Debtors' professionals, upon approval by the Court on or after the Effective Date of the Plan. This Plan also provides for payment of United States Trustee fees upon the Effective Date of the Plan This Plan also provides for four (4) classes of Secured Claims; one (1) class of Unsecured Claims; and one (1) class of Equity Interests. General unsecured creditors holding allowed (Class 5) claims against the Debtors will receive *pro rata* quarterly distributions from the Debtors' net disposable monthly income of approximately $1000/month for five (5) years, or the reasonably equivalent value thereof. The proponents of this Plan estimate that after payment of administrative claims, all allowed unsecured Class 5 will receive distributions of approximately 12.5% or twelve and one half cents (12.5¢) on the dollar. The individual equity interest holders (the Debtors) (Class 6) shall retain their individual ownership (equity) interests as the Reorganized Debtors.

Article II of this Plan sets forth definitions of key words and phrases used throughout this Plan for all creditors and other interested parties to better understand the terms and provisions of this Plan. All creditors should refer to Articles III through V of this Plan for information regarding the precise treatment of their claim. Articles VI through XIV of this Plan set forth additional provisions of this Plan governing its implementation and consummation. A Disclosure Statement which provides more detailed information regarding this Plan and the rights of creditors has been circulated with this Plan. Your rights may be affected. You should read these

2

papers carefully and discuss them with your attorney, if you have one. (If you do not have an attorney, you may wish to consult one.)

## ARTICLE II

## **DEFINITIONS**

For the purposes of this Plan, the following terms shall have the respective meanings set forth below:

2.1 "Administrative Claim" shall mean a claim for administrative expenses under section 503(b) of the Code that is an Allowed Claim and is entitled to priority in payment pursuant to section 507(a)(1) of the Code.

2.2 "Allowed Claim" shall mean (a) any Claim, proof of which is filed on or before the date designated by the Bankruptcy Court as the last date for filing a Proof of Claim with respect to such Claim, or which has been or hereafter is scheduled by the Debtors pursuant to section 521(a)(1) of the Code as liquidated in amount and not disputed or contingent, and, in either case, a Claim as to which no objection to the allowance thereof has been filed within the applicable period of limitation fixed by the Code, the Bankruptcy Rules, or an order of the Court, or (b) any Claim as to which any objection has been determined by an order or judgment of the Court allowing such Claim in whole or in part that is no longer subject to appeal, *de novo* review, or *certiorari* proceeding, and as to which no appeal, *de novo* review, or *certiorari* proceeding is pending.

2.3 "Allowed Priority Claim" shall mean the portion of an Allowed Claim entitled to priority under sections 507(a)(1), (3), (4), (5), (6), (7), (8), (9) or (10) of the Code.

2.4 "Allowed Unsecured Claim" shall mean an Allowed Claim, other than an Administrative Claim, or an Allowed Priority Claim.

2.5 "Avoidance Actions" shall mean any claims or causes of action of the Debtors' bankruptcy estate under/pursuant to Code sections 544, 545, 546, 547, 548, 549, 550, 551, or 553.

2.6 "Case" shall mean this Chapter 11 proceeding commenced by the Debtors, Teodor Cociuba and Dina Cociuba, by the filing of their Voluntary Petition for relief under Chapter 11 of Title 11, United States Code, on January 28, 2011.

3

2.7 "Causes of Action" shall mean, whenever arising, all rights, claims, and causes of action accruing to the Debtors or the Reorganized Debtors, before, on, or after the Petition Date, and not otherwise settled or compromised pursuant to this Plan or otherwise, including, without limitation, all Avoidance Actions.

2.8 "Claim" shall mean any right in existence on the Confirmation Date against the Debtors to (a) payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured, or (b) an equitable remedy for a breach of performance if the breach would give rise to a right to payment, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured, or unsecured.

2.9 "Code" or "Bankruptcy Code" shall mean the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPCPA"), as amended, Title 11, United States Code, sections 101, *et. seq*.

2.10 "Confirmation Date" shall mean the date on which the Confirmation Order is entered by the Clerk of the Court.

2.11 "Confirmation Order" shall mean the order of the Court confirming the Plan.

2.12 "Court" shall mean the United States Bankruptcy Court for the District of Arizona (the "Bankruptcy Court"), in which the Debtors' Chapter 11 Case is pending pursuant to referral of jurisdiction by the United States District Court for the District of Arizona, and any court having competent jurisdiction to enter final orders or judgments, conduct *de novo* review of issues, or withdraw any portion of the above-captioned proceeding from the Bankruptcy Court, and any court having competent jurisdiction to hear appeals or *certiorari* proceedings from any of the foregoing.

2.13 "Creditor" shall mean a Person that has a Claim against the Debtors which arose on or before the Petition Date or that has a Claim against the Debtors' bankruptcy estate of any kind specified in sections 502(g), 502(h) or 502(i) of the Code.

2.14 "Debtors" shall mean Teodor Cociuba and Dina Cociuba, the debtors in this Chapter 11 Case.

NUSSBAUM GILLIS & DINNER, P.C.
ATTORNEYS AT LAW
14500 N. NORTHSIGHT BLVD, SUITE 116
SCOTTSDALE, ARIZONA 85260
480-609-0011

2.15    "Effective Date" shall mean the day that is fifteen (15) days after the Confirmation Order is entered, provided that all conditions to effectiveness of the Plan are satisfied, or else the next business day after all conditions to effectiveness of the Plan are satisfied.

2.16    "General Unsecured Claim" shall mean an unsecured Claim without priority.

2.17    "Lien" shall mean a charge against or interest in property to secure payment of a debt of performance of an obligation.

2.18    "Petition Date" shall mean the date on which the Debtors filed their Voluntary Petition for relief commencing this Chapter 11 Case, January 28, 2011.

2.19    "Person" shall mean an individual, partnership and corporation and is further defined in section 101(41) of the Code.

2.20    "Plan" or "Plan of Reorganization" shall mean this Plan of Reorganization proposed by the Debtors, as modified in accordance with any amendments to the terms hereof or in accordance with applicable provisions of the Code or in accordance with a Confirmation Order.

2.21    "Plan Account" shall mean an FDIC insured money market/checking/savings account opened by the reorganized Debtors after the Effective Date of the Plan and maintained for the purpose of holding Plan Funds pending distribution to holders of Class 5 Allowed Claims under the terms of the Plan, See Article VI.

2.22    "Plan Funds" shall mean the funds held in the Plan Account.

2.23    "Priority Tax Claim" shall mean a Claim entitled to priority under section 507(a)(8) of the Code.

2.24    "Reorganized Debtors" shall mean Teodor Cociuba and Dina Cociuba, the Debtors in this Chapter 11 Case and the persons appointed pursuant to this Plan to serve as the post-Confirmation Order administrators of the Plan, and any successors thereto.

2.25    "Secured Claim" shall mean a Claim arising on or before the Petition Date (or thereafter upon approval of the Court) that is secured by a valid lien on property in which the Debtors' estate has an interest and which is not void or voidable under any state or federal law, including the provisions of the Code, limited to an amount equal to the lesser of the Allowed Claim or the value of the property, as determined by the Court pursuant to section 506(a) of the

Code, minus the amount of any Allowed Claim secured by a senior lien against the same property.

Terms not defined in this Plan which are defined in the Code shall have the meanings stated in the Code.

## ARTICLE III

### DESIGNATION OF CLASSES OF CLAIMS

**Classification of Claims and Interests:** Claims and interests are hereby designated in the following classes:

**Class 1:** Class 1 consists of the Secured Claim of Washington Mutual, n/k/a JP Morgan Chase Bank, N.A. This claim is to be bifurcated into secured and unsecured components with the unsecured portion to be treated in accordance with Class 5 General Unsecured Claims.

**Class 2:** Class 2 consists of the Secured Claim of Starwood Hotels and Resorts. This claim is to be bifurcated into secured and unsecured components with the unsecured portion to be treated in accordance with Class 5 General Unsecured Claims.

**Class 3:** Class 3 consists of all the Secured Claim of Chase Home Mortgage. The real property securing this claim is to be surrendered.

**Class 4:** Class 4 consists of Secured Claim of Credit Union West. This claim is to be bifurcated into secured and unsecured components with the unsecured portion to be treated in accordance with Class 5 General Unsecured Claims.

**Class 5:** Class 5 consists of General Unsecured Claims against the Debtors.

**Class 6:** Class 6 consists of all equity interests in all pre-petition and post-petition property owned or acquired by the Debtors during the term of the plan.

## ARTICLE IV

### TREATMENT OF CERTAIN UNCLASSIFIED CLAIMS

This Plan does not classify certain Claims having priority as specified in section 507 of the Code. Those Claims shall be treated as follows:

4.1 **Administrative Priority Claims.** Administrative Priority Claims include all costs and expenses of the administration of the Chapter 11 case allowed under section 503(b) of the

6
Case 2:11-bk-02402-RTB    Doc 40    Filed 05/31/11    Entered 05/31/11 18:40:10    Desc
Main Document    Page 6 of 15

Code and entitled to priority under section 507(a)(1) of the Code. The Plan provides for payment in full of all allowed administrative expenses on or before the Effective Date of the Plan unless paid prior thereto or if the holder of such administrative expense has agreed to a different treatment. Debtors estimate such expenses to include attorneys fees and costs for Debtors' counsel in the amount of $5,000, and accountant's fees and costs for the Debtors' financial advisor in the amount of $1,000, as approved by the Court, to be paid by the Debtors' agreement with Debtors' counsel and accountant, upon approval by the Court on or after the Effective Date of the Plan. Fees of the United States Trustee payable under 28 U.S.C. §1930 shall be paid in full upon the Effective Date of the Plan in accordance with section 1129(a)(12).

4.2 **Priority Tax Claims.** Any Priority Tax Claims are unimpaired. The Plan Proponents estimate that Allowed Priority Tax Claims will not exceed $250 to IRS. Allowed Priority Tax Claims will be paid in full upon the Effective Date or as soon thereafter as they become Allowed Claims.

## ARTICLE V

### TREATMENT OF CLASSIFIED CLAIMS

5.1 **Class 1: Secured Claim of Washington Mutual -** The Debtors estimate the Class 1 Claim of **Washington Mutual**, n/k/a JP Morgan Chase Bank, N.A., at $1,700,000.00 as of the petition Date, plus accrued interest. This claim is secured by the Debtors' business real property and improvements in Scottsdale, Maricopa County, Arizona, which the Debtors estimate to have a current fair market value of approximately $750,000.00. The Class 1 Claim is to be modified because the balance owing on the secured Class 1 Claim substantially exceeds the current fair market value of the collateral securing such claim. **The Debtors' Plan will bifurcate such claim into a secured claim of $750,000 and an unsecured claim of $950,000.** The secured Class 1 Claim shall be paid in monthly installments of principal and interest based upon the revised principal balance of $750,000 at an interest rate of 5.0% per annum on an amortization schedule of thirty (30) years, resulting in a monthly payment of principal and interest of $5,000. The unsecured portion of this claim shall be paid in accordance with the treatment afforded to Class 5. The Class 1 Claim is impaired.

5.2    **Class 2: Secured Claim of Starwood hotels and Resorts** - The Debtors estimate the Class 2 Claim of **Starwood Hotels and Resorts** at $18,000.00 as of the Petition Date, plus accrued interest. This claim is secured by the Debtors' Sheraton Vistana Village Timeshare in Orlando, Florida, which the Debtors estimate to have a current fair market value of approximately $8,000.00. The Class 2 Claim is to be modified because the balance owing on the secured Class 2 Claim substantially exceeds the current fair market value of the collateral securing such claim. **The Debtors' Plan will bifurcate such claim into a secured claim of $8,000 and an unsecured claim of $10,000.** The secured Class 2 Claim shall be paid in monthly installments of principal and interest based upon the revised principal balance of $8,000 at an interest rate of 5.0% per annum on an amortization schedule of five (5) years, resulting in a monthly payment of principal and interest of $167.00. The unsecured portion of this claim shall be paid in accordance with the treatment afforded to Class 5. The Class 2 Claim is impaired.

5.3    **Class 3: Secured Claim of Chase Home Mortgage** - The Debtors estimate the Class 3 Claim of **Chase Home Mortgage** at $1,200,000.00 as of the Petition Date, plus accrued interest. This claim is secured by the Debtors' former residence located at 34258 N. 86th Place, Scottsdale, Arizona 85262, which the Debtors estimate to have a current fair market value of approximately $600,000.00. The Debtors have no personal liability for repayment of this claim because of the application of Arizona's anti-deficiency laws. The Class 3 Claim is to be satisfied by surrender of the collateral to the Class 3 Claimant. Class 3 Claim is unimpaired.

5.4    **Class 4: Secured Claim of Credit Union West** - The Debtors estimate the Class 4 Claim of **Credit Union West** at $28,000.00 as of the Petition Date, plus accrued interest. This claim is secured by the Debtors' 2006 BMW 750 LI, which the Debtors estimate to have a current fair market value of approximately $24,000.00. The Class 4 Claim is to be modified because the balance owing on the secured Class 4 Claim substantially exceeds the current fair market value of the collateral securing such claim. **The Debtors' Plan will bifurcate such claim into a secured claim of $24,000 and an unsecured claim of $4,000.** The secured Class 4 Claim shall be paid in monthly installments of principal and interest based upon the revised principal balance of $24,000 at an interest rate of 5.0% per annum on an amortization schedule of five (5) years, resulting in a

monthly payment of principal and interest of $450.00. The unsecured portion of this claim shall be paid in accordance with the treatment afforded to Class 5. The Class 4 Claim is impaired.

5.5 **Class 5: General Unsecured Claims** - The holders of Class 5 Claims will be paid *pro rata* from quarterly distributions of the Debtors' net disposable income of approximately $1,000.00/month for five (5) years, or the reasonably equivalent value thereof. The Debtors estimate that Class 5 Claims will be paid a total of approximately $60,000. Class 5 Claims are impaired.

After payment of administrative claims, and if all known and outstanding unsecured claimants timely file claims or have their claims deemed allowed because they have been scheduled as liquidated, non-contingent and undisputed, the proponents of this Plan estimate all allowed Class 5 Unsecured Claims will receive distributions of approximately 12.5% or twelve and one half cents (12.5¢) on the dollar.

5.6 **Class 6: Equity Interests** - The holders of Class 6 **Equity Interests** are the Debtors, who hold an ownership interest (i.e., equity interest) in all of the prepetition and post-petition property owned or acquired by the Debtors during the term of the Plan. Other than as set forth in the plan for payment of administrative expenses and distribution to creditors, the Debtors shall retain all such equity interests. Class 6 Equity Interests are unimpaired.

## ARTICLE VI

## MEANS OF IMPLEMENTATION OF THE PLAN

On the Effective Date of the Plan, all property of the Debtors' bankruptcy estate shall be vested in the Debtors as the Reorganized Debtors who will be responsible for administering the Plan by committing their projected net disposable monthly income of $1,000 to Chapter 11 Plan payments for five (5) years, or the reasonable equivalent value thereof, for the benefit of creditors pursuant to the distributive terms and provisions of the Plan (*See* Article V, above). All Allowed Administrative and Priority Claims shall be paid directly by the Reorganized Debtors in full upon the Effective Date of the Plan. Each holder of a Class 1, Class 2 and Class 4 Allowed Claim shall be paid directly by the Reorganized Debtors as reasonable and necessary monthly expenses.

Payments to Class 5 general unsecured creditors of the Debtors shall be made from a Plan Account opened by the reorganized Debtors after the Effective Date of the Plan and maintained for the purpose of holding Plan Funds consisting of the net disposable income payments of the Debtors pending distribution to holders of Class 5 Allowed Claims under the terms of the Plan. There shall be no Post-Confirmation Managers of the Debtors, and no compensation shall be paid on account thereof. Beginning on the last day of the first calendar quarter following the Effective Date of the Plan, and continuing on the last day of each calendar quarter thereafter through month sixty (60), each holder of a Class 5 Allowed Claim shall be paid *pro rata* through such quarterly distributions of the Reorganized Debtors' net disposable income from the Plan Account. No distributions of cash shall be made under the Plan in an amount less than ten dollars ($10.00).

## ARTICLE VII

## EXECUTORY CONTRACTS AND UNEXPIRED LEASES

7.1    The Debtors as lessees assume the following executory contracts and/or unexpired leases effective upon the Effective Date of this Plan:

| | |
|---|---|
| Lessor:<br>Toyota Financial Services<br>PO Box 60114<br>City of Industry CA 91716-0000 | 2009 Toyota Tacoma<br>Maturity Date 11/01/2013<br>Lease is current and lease payment is $580.32/month |
| Lessor:<br>George Gavros<br>529 Virginia Dr.<br>Tiburon, CA 94920 | Residential Lease for<br>30396 N. 72nd Street.<br>Maturity Date 10/30/11<br>Lease is current and lease payment is $2,500.00/month |

7.2    The Debtors as lessors assume the following executory contracts and/or unexpired leases effective upon the Effective Date of this Plan:

| | |
|---|---|
| Lessee:<br>Upon the Rock A.L., L.L.C.<br>32100 N. Scottsdale Road<br>Scottsdale AZ 85266 | Business Premises located at:<br>32100 N. Scottsdale Road<br>Scottsdale AZ 85266<br>Maturity Date 12/31/2012<br>Lease is current and lease payment is $7,900/month |
| Lessee:<br>Upon the Rock A.L., L.L.C.<br>32100 N. Scottsdale Road<br>Scottsdale AZ 85266 | 2009 Toyota Tacoma<br>Maturity Date 11/01/2013<br>Lease is current and lease payment is $580.32/month |

| Lessee:<br>Upon the Rock A.L., L.L.C.<br>32100 N. Scottsdale Road<br>Scottsdale AZ 85266 | 2006 BMW 750 LI<br>Maturity Date 12/01/2013<br>Lease is current and lease payment is $450/month |
|---|---|

7.3     The Debtors will be conclusively deemed to have rejected all executory contracts and/or unexpired leases as lessors and/or lessees not expressly assumed under Section 4.2(a) above, or before the date of the Order confirming this Plan, upon the Effective Date of this Plan pursuant to the provisions of sections 365 and 1123(b)(2) of the Code. A Proof of Claim arising from the rejection of an executory contract or unexpired lease under this Section must be filed no later than thirty (30) days after entry of the Order confirming this Plan.

## ARTICLE VIII

### ALLOWANCE AND DISALLOWANCE OF CLAIMS

8.1     **Proof of Claim Filing Bar Date.** The Debtors shall request the Court to establish a bar date by which all claims not scheduled by the Debtors as undisputed, noncontingent and liquidated must be filed by creditors ("Claims Bar Date"). All creditors and interested parties shall receive written notice of such Claims Bar Date in sufficient time to file a formal Proof of Claim, if necessary.

8.2     **Disputed Claim.** A disputed Claim is a Claim which has not been Allowed or disallowed [by a final non-appealable order], and as to which either: (a) a Proof of Claim has been filed or deemed filed, and the Debtors or another party in interest have filed an objection; or (b) no proof of claim has been filed, and the Debtors have scheduled such claim as disputed, contingent, or unliquidated.

8.3     **Delay of Distribution on a Disputed Claim.** No distribution will be made on account of a disputed claim unless such claim is Allowed [by a final non-appealable order].

8.4     **Settlement of Disputed Claims.** The Reorganized Debtors will have the power and authority to settle and compromise a disputed claim with Court approval and compliance with Rule 9019 of the Federal Rules of Bankruptcy Procedure.

8.5     **Estimation of Claim.** At any time before sixty (60) days after the Effective Date of the Plan, the Reorganized Debtors may request that the Court disallow or estimate, for purposes of allowance, the amount of any disputed, contingent, or unliquidated Claim, including any Claim arising from any rejection of an executory contract or unexpired lease, pursuant to section 502(c) of the Code.

## ARTICLE IX

## DISCHARGE AND RELEASE

Upon the completion of all payments provided for under the Plan, the Debtors shall be discharged of all Claims against them. The discharge of the Debtors shall be effective as to each Claim, regardless of whether a Proof of Claim thereof was filed, whether the claim is an Allowed Claim or whether the holder thereof votes to accept the Plan. Until the completion of the payments under the Plan, creditors shall be enjoined through the Confirmation Order from taking any action to collect on their Claims; provided, however, that this provision shall not prevent any holder of any Claim from taking any action to enforce the terms of this Plan or to enforce any debt or security interest preserved or provided for in this Plan; and provided further that creditors of the Debtors whose claims are held to be nondischargeable pursuant to Code section 523 may seek to collect upon such Claims from property of the Debtors which is not property of their bankruptcy estate. The Debtors' discharge of debts pursuant to this Plan shall not be effective until the completion of all the Plan obligations described above. Should those Plan obligations not be performed, the Debtors, the Reorganized Debtors, or any other party in interest shall retain the ability to move the Court to convert this Case to one under Chapter 7 of the Code, and the entry of the Confirmation Order shall not be deemed "a discharge ... under section 1141 of [title 11]" within the meaning of Code section 727(a)(8).

## ARTICLE X

## RETENTION OF JURISDICTION BY THE COURT

After the Confirmation Date, the Court may retain jurisdiction for the following purposes, or as otherwise permitted by law:

**Objections to Claims.** To hear and determine objections to the allowance of Claims and requests for the estimation of Claims.

**Fee Applications.** To hear and determine requests for payment of Administrative Claims entitled to priority under section 507(a)(2) of the Code, including applications for compensation of professional services and disbursements.

**Pending Matters.** To hear and determine any and all pending applications, motions, adversary proceedings and other contested matters not resolved by the Plan.

**Modification of Plan.** To modify the Plan to the full extent permitted by the Plan and the applicable provisions of section 1127 of the Code.

**Resolution of Disputes and Enforcement of Payments, Rights, and Interests.** To resolve controversies and disputes regarding the interpretation or enforcement of the terms and provisions of payments, rights, and interests required or created by the Plan.

**Provisions of Plan, Confirmation Order, and Code.** To enter such orders as may be necessary to consummate, interpret, and effect the provisions of the Plan and the Confirmation Order, including, without limitation, appropriate orders to protect the reorganized Debtors, or as may be otherwise required by the Code.

**Orders Closing and Reopening Case.** To enter such orders as may be appropriate upon substantial consummation of the Plan to close the Case by entry of a Final Decree or to reopen the Case to administer assets, for the entry of an order determining that the Debtors have been discharged of Claims or to grant the Reorganized Debtors other relief, or for other cause.

## ARTICLE XI

### FEASIBILITY OF THE PLAN AND FINANCIAL PROJECTIONS

The Debtors believe that the proposed Plan is feasible and is unlikely to be followed by the liquidation or need for further financial reorganization of the Debtors. *See* DISCLOSURE STATEMENT: "ARTICLE II – Paragraph 2.3 <u>Financial Information</u>."

# ARTICLE XII

## LIQUIDATION ANALYSIS

Before it may confirm the Plan, a Court must determine (with certain exceptions) that the Plan provides to each member of each impaired class of allowed claims a recovery that is at least equal to the distribution that such member would receive if the estate of the Debtors were liquidated on the Effective Date under Chapter 7 of the Code. The Plan Proponents have concluded that under the Plan each holder of a claim will receive or retain property of a value that is equal to or greater than the amount that such holder would receive or retain if the estate of the Debtors were liquidated outside Chapter 11. The Debtors believe that the Plan provides a more substantial return than a liquidation of their assets and interests in property at the present time because there is no realizable value in their real and personal property for distribution in a Chapter 7 liquidation proceeding in excess of their allowable exemptions and/or secured debt, thus yielding no value available for distribution in a Chapter 7 liquidation. A Liquidation Analysis was attached to Debtors Disclosure Statement for Plan of Reorganization as **Exhibit 3** and incorporated herein by reference.

# ARTICLE XIII

## SPECIAL RISK FACTORS

The Plan is funded totally from wages to be paid to Debtors Teodor Cociuba and Dina Cociuba for their employment services for five (5) years, or the reasonable equivalent value thereof. As such, the success or failure of the Plan is dependent upon their health and the stability of their employment relations.

# ARTICLE XIV

## DEFAULT

If the Reorganized Debtors are unable to perform the terms and conditions of a confirmed Plan, then they will be in default. Any creditor may seek to enforce the Plan. Before doing so, however, a creditor must first provide at least twenty-one (21) days notice to the Reorganized Debtors specifying the nature of the alleged default and providing the Reorganized Debtors a twenty-one (21) day period to cure such default. Any such notice shall be in writing and sent to

14

the Reorganized Debtors, by certified mail, at their address of record with a copy sent, by certified mail, to: Peter M. Gennrich, Nussbaum Gillis & Dinner, P.C., 14500 N. Northsight Blvd., Suite 116, Scottsdale, AZ 85260.

## ARTICLE XV

### CONDITIONS TO CONFIRMATION AND EFFECTIVENESS

Confirmation of the Plan shall not occur unless the Bankruptcy Court shall have entered a Confirmation Order, which (a) shall not have been stayed and (b) shall have been final and non-appealable. The Effective Date of the Plan shall be the day that is fifteen (15) days after the Confirmation Order is entered, provided that all conditions to effectiveness of the Plan are satisfied, or else the next business day after all such conditions to effectiveness are satisfied.

## ARTICLE XVI

### CLOSING AND REOPENING CASE

16.1 Upon substantial consummation of the Plan, the Reorganized Debtors may apply for an order closing the Case, and, if appropriate, pursuant to Bankruptcy Code section 350(a) of the Bankruptcy Code, the Court shall close the Case by entry of a Final Decree.

16.2 The Case may be reopened pursuant to section 350(b) of the Bankruptcy Code to administer assets, for the entry of an order determining that the Debtors have been discharged of Claims or to grant the Reorganized Debtors other relief, or for other cause.

DATED this 31st day of May, 2011.

By: */s/ Teodor Cociuba*
Teodor Cociuba, Debtor

By: */s/ Dina Cociuba*
Dina Cociuba, Debtor

**NUSSBAUM GILLIS & DINNER, P.C.**

*/s/ Peter M. Gennrich*
Randy Nussbaum
Peter M. Gennrich
Attorneys for Debtors

15